**Curtis FREEMAN, Plaintiff–Appellant,**

v.

**ALLSTATE LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 99–16501.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2001

Filed June 19, 2001

---

534

Jerrold B. Braunstein, Dennis, Schottky & Braunstein, Sacramento, California, for the appellant.

David A. Riegels, Riegels Campos & Kenyon LLP, Sacramento, California, for the appellee.

Before: GOODWIN, HUG, and W. FLETCHER, Circuit Judges.

HUG, Circuit Judge:

## I. Overview

Appellant Curtis Freeman ("Freeman") appeals the district court's judgment, following a bench trial, allowing Allstate Life Insurance Company ("Allstate") to rescind a life insurance policy issued to Freeman's deceased wife, Shelley. The district court found that Mrs. Freeman had made a material misstatement while applying for the policy. Freeman argues that his wife's innocent misstatement does not give Allstate the right to rescind the policy. Freeman also contends that the district judge erred in allowing Allstate to testify about its underwriting criteria. Finally, Freeman argues that Allstate's conduct constituted bad faith. We affirm. Because a material, albeit innocent, misstatement is grounds for recission, Allstate was entitled to rescind the policy and did not act in bad faith by doing so. And because Allstate's underwriting criteria were relevant to the issue whether the misstatement was material, testimony on that topic was properly allowed.

## II. Factual Background

On February 12, 1996, Shelley Freeman accepted a telephone solicitation made on behalf of Allstate for the purchase of a $75,000.00 life insurance policy. She was contacted because she had a Sears credit

card account. During the telephonic application interview, which was recorded and later transcribed, Mrs. Freeman was asked the following questions and gave the following answers:

Q: Okay, now on the last three questions, I'll read a list of illness [sic] and please listen carefully and after I have finished answer "yes" or "no" to the question. During the past two years, have you sought or received treatment or advise [sic] or been hospitalized for cancer, stroke, diabetes, blood-pressure, for a disease of the heart, liver, kidneys, intestines or the nervous or respiratory systems?

A: Uh, no.

Q: Okay, and you answered "no," correct?

A: Yes.

Mrs. Freeman also responded in the negative to the only other questions asked of her, concerning whether she smoked, had been arrested or treated for drug or alcohol abuse, or had AIDS. The solicitor informed Mrs. Freeman that she qualified for the policy, and Allstate mailed to Mrs. Freeman a written copy of the policy, which included a Term Life Enrollment Form Confirmation setting forth the questions and answers from the telephone solicitation and application.

In fact, Mrs. Freeman did suffer from a condition of the nervous system, epilepsy, for which she took medication every other day. Four months after purchasing the policy, on June 19, 1996, Mrs. Freeman died at her home. On November 20, 1996, Appellant Curtis Freeman submitted a proof of claim to Allstate. Allstate acknowledged the claim but informed him that because the death occurred within the two-year contestable period, it would seek information regarding Mrs. Freeman's health history prior to her application. On January 29, 1997, Allstate sent Freeman a letter and a premium refund, explaining that the policy was void because medical records indicated that Mrs. Freeman failed to disclose to Allstate during the application that she was being treated for respiratory problems. On February 19, 1997, Allstate sent a second letter explaining that in the first letter, "insurance coverage was rescinded inadvertently [sic] only for the respiratory condition which was of no concern, but the important concern was epilepsy seizure disorder." Allstate based its conclusion on medical records indicating that on January 19, 1996 (four weeks before the telephone solicitation), Mrs. Freeman had seen a neurologist, who continued her medication for treating her seizure disorder.

Freeman filed suit against Allstate in California Superior Court asserting claims for breach of contract, fraud, and insurance bad faith. Allstate removed the case to the United States District Court for the Eastern District of California, invoking diversity jurisdiction by virtue of Freeman's California citizenship and Allstate's Illinois citizenship.

Prior to trial, Freeman filed a motion in limine seeking to preclude Allstate from offering evidence of its underwriting criteria. The basis of the motion was Allstate's alleged failure to produce documents relating to its underwriting criteria pursuant to a discovery request. The district court rejected the motion because Freeman had failed to prosecute the issue before the magistrate judge as required by local rule and the court's final pretrial order.

The case was tried to the bench on June 8, 1999. Freeman conceded in his trial brief that Mrs. Freeman answered the solicitor's questions incorrectly, and Allstate did not contend that she had any intent to deceive. The district judge believed the testimony of Allstate's operations manager, Jennifer Fredericksen, that Allstate

would not have issued the policy had it known about Mrs. Freeman's epilepsy. Accordingly, he found the misstatement material. The district judge then considered "whether Mrs. Freeman, as an ordinary layman, failed to understand that her epilepsy had any relation to a nervous system disease." Because Mrs. Freeman had been coping with epilepsy for several years, was taking medication every other day, had suffered three seizures during her two-year marriage, and had seen neurologists, the district judge found that she could not have failed to understand the connection between her epilepsy and a disease of the nervous system and, therefore, had misstated her medical condition. He allowed Allstate to rescind the policy because of the material misstatement.

### III. Analysis

The district court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo. *Diamond v. City of Taft*, 215 F.3d 1052, 1055 (9th Cir.2000) (citations omitted). Evidentiary rulings are reviewed for an abuse of discretion and should not be reversed absent some prejudice. *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 927–28 (9th Cir.2000). Because Mrs. Freeman resided in California and the insurance contract was made in California, California substantive law governs this diversity action. *Taylor v. Sentry Life Ins. Co.*, 729 F.2d 652, 654 (9th Cir.1984) (per curiam).

#### A. Recission of the Insurance Policy

Freeman contends that an innocent misrepresentation does not give the insurer the right to rescind; rather, he argues that there must be some intent to deceive. The district court's opinion eloquently explained, with the support of substantial authority, that the opposite is true. In 1973 the California Supreme Court re-

stated the long-established law of concealment in insurance contracts:

> [A]n insurer has a right to know all that the applicant for insurance knows regarding the state of his health and medical history. Material misrepresentation or concealment of such facts are grounds for recission of the policy, and *an actual intent to deceive need not be shown. Materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer.* The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law.
>
> *On the other hand, if the applicant for insurance had no present knowledge of the facts sought, or failed to appreciate the significance of information related to him, his incorrect or incomplete responses would not constitute grounds for recission.* ... Finally, as the misrepresentation must be a material one, [a]n incorrect answer on an insurance application does not give rise to the defense of fraud where the true facts, if known, would not have made the contract less desirable to the insurer.

*Thompson v. Occidental Life Ins. Co.*, 9 Cal.3d 904, 915, 109 Cal.Rptr. 473, 479, 513 P.2d 353, 360 (1973) (in bank) (emphasis added) (quotation and citations omitted); *see also Telford v. New York Life Ins. Co.*, 9 Cal.2d 103, 69 P.2d 835, 837 (1937) (in bank) (per curiam) ("A false representation or a concealment of fact whether intentional or unintentional, which is material to the risk vitiates the policy. The presence of an intent to deceive is not essential.").

Freeman also argues that because his wife's epilepsy was controlled with medication, it was not life-threatening and was therefore an insubstantial condition

that did not need to be disclosed. This, too, is not the law. In *Life Ins. Co. of N. Am. v. Capps,* 660 F.2d 392, 394 (9th Cir. 1981), we rejected the argument that because the insured believed that her heart problems were insubstantial, she was justified in not revealing prior treatment. Where an insured is aware of her condition, symptoms, or treatment, she is obliged to disclose them upon request. *Id.*

The California Insurance Code codifies these principles as well. *See* Cal. Ins.Code § 330 (West 1993) ("Neglect to communicate that which a party knows, and ought to communicate, is concealment."); *Id.* § 331 ("Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."); *Id.* § 334 ("Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries.").

The district court correctly identified the principles stated above and applied them to the facts. It was conceded that Mrs. Freeman's answer was inaccurate. Based on the testimony of Allstate's operations manager that Allstate would not have issued the policy had it known about Mrs. Freeman's epilepsy, the district court found the information material. This was not clear error, especially because, by asking about diseases of the nervous system, Allstate demonstrated that it considered the information important. Finally, the district court considered the possibility that Mrs. Freeman may not have realized that she suffered from a "disease of the nervous system," but found that she must have realized that epilepsy fell into that category. Given that Mrs. Freeman had been coping with epilepsy for several years, was taking medication every other day, had suffered three seizures during her two-year marriage, and had seen neurologists, this finding was not clearly erroneous. The district court correctly determined that Allstate had the right to rescind the policy because of Mrs. Freeman's material misstatement, even though the misstatement was not made with any intent to deceive or mislead Allstate.

**B. Admission of Evidence of Allstate's Underwriting Criteria**

As discussed above, the materiality of Mrs. Freeman's epilepsy was at issue; therefore, Allstate's underwriting criteria were relevant. Freeman argues that the evidence should nevertheless have been excluded because Allstate failed to produce documents about its underwriting criteria in response to requests for production. The district court declined to sanction Allstate in this manner because Freeman failed to prosecute the issue before the magistrate judge as required by E.D. Cal. Local Rule 72–302(c) and the court's final pretrial order. This was not an abuse of discretion.

**C. Bad Faith**

Because Allstate had the right to rescind the policy due to Mrs. Freeman's material misstatement, it did not act in bad faith by denying Freeman's claim for benefits.

**Conclusion**

For the reasons expressed above, the judgment of the district court is AFFIRMED.