William McEUIN, Plaintiff–Appellee,

v.

CROWN EQUIPMENT CORPORA-TION, fka Crown Controls Corpora-tion; North West Handling Systems, Inc., Defendants–Appellants.

No. 00–36043.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2002.

Filed April 24, 2003.

As Amended on Denial of Rehearing and Rehearing En Banc June 17, 2003 *.

---

* Judge B. Fletcher and Berzon have voted to deny the petition for panel rehearing but to make one minor change. Judge O'Scannlain has voted to grant the petition for panel rehearing. Judges O'Scannlain and Berzon vote

to deny the petition for rehearing en banc and    Judge B. Fletcher so recommends.

John Aisenbrey, Kansas City, MO; Malcolm E. Wheeler, Denver, CO; Donald H. Pyle, Portland, OR; Robert Toland, II, Wayne, PA; and Lee Mickus, Denver, CO, for the defendants-appellants.

Mark Zwerling, Kathryn H. Clarke, and J. Randolph Pickett, Portland, OR, for the plaintiff-appellee.

Before B. FLETCHER, O'SCANNLAIN, and BERZON, Circuit Judges.

Opinion by Judge BETTY B. FLETCHER; Partial Concurrence and Partial Dissent by Judge O'SCANNLAIN.

---

**OPINION**

BETTY B. FLETCHER, Circuit Judge.

Defendants–Appellants Crown Equipment Corporation and North West Handling Systems, Inc. (collectively "Crown") appeal the district court's ruling excluding the introduction of evidence in a product liability suit initiated by Plaintiff William McEuin ("McEuin"). McEuin was injured while operating a forklift manufactured by Crown. At trial, McEuin claimed that the forklift was defectively designed because the operator cabin was not enclosed with a door and because Crown did not provide an adequate warning concerning the risks associated with the forklift. The jury awarded McEuin compensatory and punitive damages. Crown contends that the district court erred in not permitting the introduction of military forklift design specifications and reports of independent engineers consulted by Crown. The district court had diversity jurisdiction to hear this action. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

**I.**

Crown Equipment Corporation began designing stand-up forklifts in 1969. Crown eventually developed and produced for sale the 30RCTT–190 ("30RC"). The 30RC is operated from a standing position, with the operator facing sideways so that by turning his head 180 degrees he can shift his gaze from the front to the back end of the vehicle. Although Crown has manufactured and sold doors for the 30RC, the 30RC does not have a door enclosing the operator cabin as a standard feature.

In 1991, Price Co.[1] requested Crown to install doors on the stand-up forklifts it

---

1. Price Co. and Costco merged and became Price Costco in 1993. The merger was announced on June 17, 1993 and was completed on October 22, 1993.

purchased from Crown to prevent or minimize injuries. Crown discouraged Price Co. from ordering the doors, and as a result, Price Co. did not order doors. In March 1993, North West Handling Systems, a distributor of Crown Equipment Corporation forklifts, ordered a 30RC from Crown Equipment Corporation, which it sold and delivered to Price Costco.

In 1995, McEuin injured his left foot while operating the 30RC in the course of his employment with Price–Costco. McEuin's injury occurred while he was operating the 30RC in a "forks-trailing," or reverse, direction. McEuin diverted his attention in order to check on the position of the cargo, extending his left leg outside the operator's cabin as he leaned toward the front of the forklift. His foot was crushed as the rear of the forklift collided with a steel post.

McEuin sued Crown in federal district court under Oregon tort law, OR. REV. STAT. § 30.920, alleging that Crown is strictly liable for designing, manufacturing, distributing, and selling the 30RC in an unreasonably dangerous condition because (1) it failed to supply a door that would have reduced or eliminated the risk of injury to the operator's left leg, and (2) the 30RC was sold without adequate warnings of the severity of the risk of serious injury to the operator's left leg caused by the lack of a door. McEuin sought both compensatory and punitive damages.

The warning posted by Crown on the 30RC recommends that the operator "[s]tay within the operator area and stop truck completely before getting off" because "legs outside the operator area can be pinned or crushed whenever the truck is moving." McEuin testified that he never knowingly extended his foot outside the operator cabin, but that his action in extending his leg was involuntary. McEuin presented evidence at trial, through the testimony of his experts, that the inadvertent extension of his foot to maintain his balance and the resulting injury were foreseeable due to the openness of the 30RC design and the position of the operator within the cabin.

According to McEuin's theory of liability, the 30RC should have included a door in order to prevent accidents such as his from occurring. McEuin supported his claim for punitive damages by arguing that Crown ignored applicable safety standards, lied to James Perry, the Price Co. supervisor in charge of purchasing industrial equipment, and refused either to retrofit its 30RC forklifts with doors or to equip new models with them as part of a litigation strategy intended to prevent potential plaintiffs from inferring that Crown conceded that the absence of a door was a design defect.

The district court excluded evidence considered by Crown to be crucial to its defense. In particular, the court precluded Crown from introducing evidence of military specifications requiring that forklifts be built without doors enclosing the operator cabin. Those specifications direct that, for forklifts purchased by the military, the operator's cabin "shall ... permit unobstructed egress from the rear of the truck." Crown sought to introduce this evidence in order to show that the military specifications preceded and influenced the design of its forklifts.

In addition, the court precluded Crown from introducing reports generated by independent engineers and allegedly relied upon by Crown in the design of its forklifts. In 1989, Crown requested Universal Energy Systems to analyze accident reports involving forklifts operated, like the 30RC, from a standing position. Crown claims that the results of the analysis showed that prompt exit provided the best operator protection in off-dock excursions and tip-over accidents and that remaining

within the operator cabin provided the best protection in collisions of the kind that caused McEuin's injury. In 1991, Crown hired Romualdi, Davidson and Associates ("Romualdi") to perform a similar analysis of accidents involving Crown forklifts producing similar results. Romualdi concluded that "the installation of a door or other type of closure to the operator compartment would not be advisable" because the addition of a door "would likely cause not only more injuries, but more severe injuries to operators of these lift trucks."

Crown had intended to introduce both the military and independent engineering evidence in support of its position that forklifts with doors are more dangerous than forklifts without because of the resulting impairment of the operator's egress during potentially fatal accidents in which a forklift is tipped over. The district court did not allow the introduction of the reports or of the military specifications. The court did, however, allow Crown to introduce evidence that it had solicited and relied upon engineering reports and that it may have relied on military specifications in designing the 30RC.

At the close of McEuin's case and then again at the conclusion of the evidence, Crown moved for judgment as a matter of law on McEuin's punitive damages claim. The district court denied both motions.

The jury found that Crown's warning was adequate, but it found that the design of the 30RC was dangerously defective. It divided fault for McEuin's injury equally between plaintiff and defendants. The jury also determined that McEuin was entitled to punitive damages. The district court awarded McEuin half of his claimed compensatory damages ($612,251.92) and the jury's full recommendation of punitive damages ($1,250,000). Crown renewed its motion for judgment as a matter of law as to punitive damages under FED. R. CIV. P.

50 ("Rule 50") and, alternatively, moved for a new trial under FED. R. CIV. P. 59 ("Rule 59"). The district court denied Crown's motion, and Crown appeals.

## II.

We review evidentiary rulings of the district court for abuse of discretion. *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir.2001) (citing *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 927–28 (9th Cir.2000)). To reverse on the basis of an evidentiary ruling, this Court must conclude both that the district court abused its discretion and that the error was prejudicial. *Id.* "A reviewing court should find prejudice only if it concludes that, more probably than not, the lower court's error tainted the verdict." *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 688 (9th Cir.2001).

The district court's denial of Crown's Rule 59 motion for a new trial is also reviewed for an abuse of discretion. *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 818 (9th Cir. 2001); *E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir.1997). The district court's denial of Crown's Rule 50 motion for judgment as a matter of law is reviewed *de novo*. *Monroe v. City of Phoenix*, 248 F.3d 851, 861 (9th Cir.2001).

## III.

### A. Evidentiary Rulings

### 1. Military Specifications

The district court did not abuse its discretion in granting McEuin's pretrial motion to exclude the introduction of military specifications as irrelevant, thus inadmissible under Rule 402 of the Federal Rules of Evidence, to prove that the lack of a door on a forklift is not unreasonably dangerous. Crown sought to introduce the military specifications to demonstrate

that the 30RC conformed with military standards, influenced the design of the 30RC, and supported its contention that a door is unreasonably dangerous. McEuin correctly argued that the military design specifications should be excluded because the 30RC "has no application in any military setting" and because "military standards have no relevance in a strict liability claim where the focus is on the question of whether the product was in unreasonably dangerous condition at the time of sale." *See* OR. REV. STAT. § 30.920.

■ The district court also considered whether the military specifications should be admitted for the limited purpose of their relevance to the punitive damages claim. Although the military specifications may be relevant to prove the state of mind of Crown in designing the 30RC, the district court properly performed the 403 balancing test in determining not to admit the military specifications. *See* FED. R. EVID. 403(stating that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or undue delay). The court stated that excluding the military specifications "would not preclude the designer from testifying that he was aware of and may have relied on a military standard, without going into what the military standard is or was." Crown design engineer, Dan Dunlap, was permitted to and did in fact testify to this effect.

Crown argues that the specifications should have been admitted because McEuin took advantage of their exclusion to argue before the jury that no "standards" required Crown to manufacture its forklifts without doors. However, neither the American National Standards Institute ("ANSI") nor the Occupational Safety and Health Administration ("OSHA") require that forklifts be designed and manufactured without doors. *See* Powered Industrial Truck Operator Training, 63 Fed.Reg.

66,238 (codified at 29 C.F.R. §§ 1910, 1915, 1917, 1918, and 1926) (1998). ANSI, acting through subcommittee, promulgates standards for industrial vehicles operated in the private sector. The relevant ANSI standards provide:

> Operator protection [ ] shall be designed so as not to interfere with the normal operation of the controls, to allow getting on and off the truck easily, and to permit rapid exit in an emergency.

ANSI B56.1 Safety Standards § 7.28.3 (1990). Moreover, "[o]perator enclosures may be provided in conjunction with the platform. If provided, they shall permit easy ingress and egress from the platform." *Id.* § 7.34. Thus, ANSI regulations specifically note that doors may enclose the operator cabin. The military specifications at issue, not having the force of law, could not have required Crown to manufacture its non-military 30RC forklifts to any particular specification.

Crown argues on appeal that the military specifications themselves are directly relevant to Crown's state of mind and, therefore, should have been admitted for the purpose of challenging McEuin's claim for punitive damages. Under Oregon law, a claim for punitive damages must be proved by clear and convincing evidence that the defendant "has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." OR. REV. STAT. § 18.537(1). Punitive damages are interpreted by the Oregon Supreme Court as "a penalty for conduct that is culpable by reason of motive, intent or extraordinary disregard of or indifference to known or highly probable risks to others." *Andor v. United Air Lines, Inc.*, 303 Or. 505, 739 P.2d 18, 25 (1987); *see also DeMendoza v. Huffman*, 334 Or. 425, 51 P.3d 1232, 1242–43 (2002).

The court's qualification to its ruling, that defense witnesses would be permitted to testify to defendant's awareness of and reliance upon military specifications, speaks directly to the state of mind consideration. The court stated that it would permit Crown design engineers to testify as to their state of mind in considering military specifications while developing the 30RC without allowing them to introduce the contents of those specifications. Although the court did not explicitly refer to FED. R. EVID. 403 ("Rule 403"), it seems likely that the court was concerned about the prejudicial effect of introducing the specifications themselves. Military specifications would appear to carry the imprimatur of government sanction, and might therefore resemble in the jury's mind something akin to an actual regulation. In addition, both the legal effect and the genesis of these specifications might have been put at issue by introducing the specifications themselves, resulting in confusion of the issues for the jury as well as in an unnecessary waste of the court's time.

■ . Because the court had discretion to exclude the specifications under Rule 403, it committed no error by doing so. *See, e.g., Longenecker v. Gen. Motors Corp.,* 594 F.2d 1283, 1286 (9th Cir.1979) (stating that "[t]rial judges are better able to sense the dynamics of a trial than we can ever be, and broad discretion must be accorded them in balancing probative value against prejudice"). However, even if the court erred by excluding relevant evidence without relying upon Rule 403, Crown has failed to prove prejudice. Crown engineer Dunlap was permitted to provide state of mind testimony in which he referred to the military specifications. It is not clear that knowledge of their content would have influenced the jury's decision, as the specifications do not report the government's independent investigation into the safety considerations at issue in this case. In other words, the jury could have concluded

that the military specifications were motivated by price rather than safety concerns. If the jury so concluded, the fact that Crown followed those specifications would do nothing to refute McEuin's theory that Crown was motivated by profit, rather than by safety concerns.

### 2. *Independent Engineering Reports*

The district court did not err in granting McEuin's pretrial motion to exclude independent engineering reports as inadmissable hearsay. *See* FED. R. EVID. 802, 901. Crown engineers allegedly solicited and relied upon reports by outside engineers. These engineers, however, were not provided as expert witnesses, and therefore, the reports could not be authenticated under FED. R. EVID. 901. Crown suggested that the court receive the evidence with a limiting instruction to the jury, stating that the reports could not be used to resolve the issue of defect but could be used to determine Dunlap's state of mind when designing the 30RC. Although Crown indicated that it was inclined to agree with the court's analysis that the reports were inadmissible as to the strict liability claims, Crown continues to claim on appeal that the reports are admissible as to both the strict liability and punitive damages claim.

The district court decided to exclude the reports on two grounds. First, the court ruled that the reports were hearsay. Second, the court stated that "those documents and reports would come in, albeit for the state of mind of Crown; however, the actual impact, as viewed by the jury, would be such that I don't believe they could, in fact, limit the use of those reports for consideration with respect to possible punitive damages."

■ Federal Rule of Evidence 802 provides that hearsay evidence is not admissible. Hearsay is offered "to prove the truth of the matter asserted." FED. R.

EVID. 801(c); *see also Bergene v. Salt River Project Agric. Improvement & Power Dist.,* 272 F.3d 1136, 1142 (9th Cir.2001). The district court's hearsay ruling properly applies to Crown's attempt to use independent reports as evidence that the design of the 30RC was not defective (i.e., against plaintiff's liability claim). However, the hearsay ruling does not apply to McEuin's punitive damages claim, because, as the court recognized, the reports would be relevant to reveal Crown's state of mind. Rule 803 provides for a state of mind exception to the hearsay rule, and Crown's attempted limited use of the independent engineering reports clearly satisfies that exception.

■ "A district court's decision to exclude or admit evidence under FRE 403 is reviewed with 'considerable deference.'" *United States v. Hankey,* 203 F.3d 1160, 1166(9th Cir.2000) (citing *United States v. Cordoba,* 194 F.3d 1053, 1063 (9th Cir. 1999)); *United States v. Easter,* 66 F.3d 1018, 1021 (9th Cir.1995) (quoting *United States v. Fagan,* 996 F.2d 1009, 1015 (9th Cir.1993), for the proposition that "[t]he district judge is given wide latitude in determining the admissibility of evidence under this standard."). Rule 403 provides that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. In order to exclude the independent reports from use to refute plaintiff's punitive damages claim, the court had to determine that their probative value was "substantially outweighed" by the danger of prejudice as provided by Rule 403. Crown requested the district court to admit the independent safety reports with a limiting instruction admonishing the jury to consider them only within the context of Crown's state of mind and not with regard to its liability inquiry. The court again offered a compromise similar to the one which it struck with regard to the exclusion of the military specifications, stating that defense witnesses could testify that Crown retained independent consultants and relied upon their reports but could not testify as to the contents of those reports. We do not find that the court abused its discretion in excluding the engineer reports.

■ Even if the district court erred in excluding the independent engineer reports, Crown has failed to prove that it suffered prejudice. The jury received a substantial amount of evidence regarding the background information recommending a door that Crown relied upon when designing the forklift including ANSI standards, OSHA Regulations and Commentary, as well as testimony by Crown's designer Dunlap that he had consulted experts, received reports from them, and relied on their advice. The jury also heard testimony that an ANSI committee twice rejected a recommendation that doors become a requirement on stand-up forklifts. Although the excluded reports would have provided more evidence of the content of the materials Dunlap considered, the excluded evidence does not add anything to the background materials presented to the jury. Moreover, it is clear that the jury believed that Dunlap distorted data and other evidence for the purpose of limiting Crown's liability, including investigating tip-over and off-the-dock accidents while ignoring accidents such as McEuin's, although the latter were much more numerous. Expert reports commissioned by Crown and recommending against doors weighed against the distorted data likely would have done little to dissuade the jury from this belief. Therefore, we cannot conclude that excluding the engineer reports "more probably than not" tainted the jury's verdict. *Tennison,* 244 F.3d at 688.

## IV.

■ Following the jury's verdict, Crown moved under Rule 50 for judgment as a matter of law on McEuin's claim for punitive damages or, in the alternative, for a new trial under Rule 59. Crown provides no independent basis on appeal for remand for a new trial other than the evidentiary rulings discussed above. Since the district court did not abuse its discretion in applying the Rules of Evidence, there are no grounds for a new trial.

■ Crown's motion for judgment as a matter of law on McEuin's punitive damages claim is reviewed *de novo. Monroe,* 248 F.3d at 861. Punitive damages may be granted under Oregon law if the plaintiff demonstrates by clear and convincing evidence that the defendant engaged in "conduct that is culpable by reason of motive, intent or extraordinary disregard of or indifference to known or highly probable risks to others." *Andor,* 739 P.2d at 25. Factors available for the jury's consideration in determining liability for punitive damages include:

(a) The likelihood at the time that serious harm would arise from the defendant's misconduct;

(b) The degree of the defendant's awareness of that likelihood;

(c) The profitability of the defendant's misconduct;

(d) The duration of the misconduct and any concealment of it;

(e) The attitude and conduct of defendant upon discovery of the misconduct;

(f) The financial condition of the defendant; and

(g) The total deterrent effect of other punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, punitive damage awards to persons in situations similar to the claimant's and the severity of criminal penalties to which the defendant has been or may be subjected.

OR. REV. STAT. § 30.925(2). McEuin presented evidence satisfying several of these factors, including that Crown was aware of numerous collision-based accidents involving 30RC forklifts; that these accidents continued to occur over several years; that Crown attempted to conceal that the 30RC was defective by misleading Price–Costco as to the requirements of industry standards; and that Crown responded to knowledge of the collision-based accidents by maintaining its open-ended design in order to preclude an inference by potential litigants that Crown was correcting what it knew to be a defect in the 30RC's design.

■ "Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's." *Scott v. Ross,* 140 F.3d 1275, 1281 (9th Cir.1998). A motion for judgment as a matter of law should be granted only if the verdict is "against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result," *Pape Lift,* 115 F.3d at 680 (internal quotation marks and citations omitted), and all evidence must be weighed in favor of the nonmoving party, *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149–50, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Conversely, Crown attempts on appeal to have us view the evidence selectively and in its favor.

■ First, Crown argues that its warning, advising operators of the potential danger in placing parts of the body outside of the operator cabin, is "not consistent with 'conscious disregard of or highly irresponsible indifference' to safety." While this particular piece of evidence does indicate a concern for safety rather than "conscious indifference," it

does not in itself present overwhelming evidence contradicting the evidence provided by plaintiff. Oregon law makes no special exception relieving manufacturers from punitive damages if they issue product warnings.

■ Second, Crown refers us to evidence properly excluded by the district court at trial, such as the military specifications and independent engineering reports. The jury cannot be said to have reached an erroneous verdict because of evidence that was not before it at trial. Evidence not admitted at trial cannot be used in a review of the district court's denial of judgment as a matter of law. *Elbert v. Howmedica, Inc.*, 143 F.3d 1208, 1209 (9th Cir.1998) (holding that when ruling on a Rule 50 motion, "[t]he record should be taken as it existed when the trial was closed").

■ As a result, Crown is left to support its motion only with testimony from defense witnesses to combat evidence of defendant's indifference to risk of harm to others. Testimony by Crown engineer Dunlap, for example, contradicted plaintiff's contentions that Crown was indifferent to operator safety in collision-based accidents. However, there was other evidence from which the jury could draw reasonable inferences to the contrary. The district court may not reject the jury's verdict simply because another appears preferable. *Reeves*, 530 U.S. at 149–50, 120 S.Ct. 2097; *see also Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944) ("Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.").

## V.

For the foregoing reasons, the district court did not abuse its discretion in excluding the military specifications and independent engineer reports on either the strict liability or punitive damages claims. Even if the district court erred in excluding the evidence, the error was harmless since it would not have affected the jury's verdict. Moreover, the district court did not err in denying Crown's motion for a new trial, or in the alternative, judgment as a matter of law.

**AFFIRMED.**

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part.

Because I readily agree with my colleagues that the military specifications were properly excluded, I join Parts I, II, and III.A.1 of the majority opinion. I believe the district court abused its discretion in refusing to admit the engineering reports, however, and therefore I must respectfully dissent from Part III.A.2.

To recover punitive damages, the plaintiff had to prove by clear and convincing evidence that the defendant acted with wanton disregard for the health, safety, and welfare of others. *See* O.R.S. §§ 18.537, 30.925. The plaintiff built his case for punitives on evidence tending to show that the defendant had wilfully disregarded its own accident data, ignored applicable safety standards, and lied to purchasers of its equipment, all as a part of an overall strategy to stave off product liability litigation. In response to these charges of bad faith, the defendant offered evidence that it had commissioned two independent engineering reports. These reports recommended *against* the installation of doors because the addition of doors would cause more injuries, and more serious injuries. The district court excluded the reports, however, and the jury returned a punitive damages award of $1.25 million.

Federal Rule of Evidence 403 provides,

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[1]

The significance of the independent reports is obvious. The plaintiff argued that Crown acted with reckless indifference in failing to include a forklift door, and that Crown ignored its own accident data, which allegedly showed a clear need for a door. Crown's retention of multiple, independent consultants directly counters this theory of the case, and strongly supports its contention that it did not close its eyes to the need for a door. Rather, the reports tend to show that Crown went to the expense and trouble to solicit an independent assessment with regard to the wisdom of adding doors to its forklift design. The fact that both of the independent consultants, after detailed analysis, recommended *against* the addition of doors is strong evidence that Crown did not act in bad faith.

The only factor the district court pointed to in excluding the reports was that they were hearsay as to liability,[2] and that therefore the jury may consider them for an improper purpose. To be sure, this is a legitimate concern, but it is one that could have been negated by the issuance of a limiting instruction. *See* Fed.R.Evid. 105 ("When evidence is admissible ... for one purpose but not admissible ... for another purpose ..., the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."). Indeed, the defendant urged to the district court to admit the reports with a proper limiting instruction. Given the unquestioned significance of the reports, the district court's failure to admit them with a proper limiting instruction was an error.

That error was prejudicial. *See Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir.2001) (reversal required

---

1. In excluding the independent reports, the district court misstated the standard for admissibility, stating that "it's a question, under Rule 403, whether the relevancy of those documents outweighs its potential prejudicial value." In doing so, the district court impermissibly placed the burden on Crown to show that the reports' probative value outweighed any potential for prejudice. While we have held that a district court abuses its discretion when it fails to apply the correct legal standard, *see Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir.2000), it may well be the case that the district court simply misspoke, and that it understood and applied the correct governing standard. It is not necessary to reverse on that ground because, even if the district court got the standard right, it gave insufficient weight to the high probative value of the reports, and its decision to exclude the reports tainted the jury's verdict.

2. The majority suggests that because the reports are hearsay as to liability, they are only admissible because they come within Rule 803's 'state of mind' exception. With respect, this is wrong. Whether an item of evidence is hearsay depends on the purpose for which it is offered. *See* Fed.R.Evid. 801(c). The reports may be hearsay as to liability, but they are *not* hearsay as to the claim for punitive damages. This is so because the purpose of the offer is not to prove the truth of the matter asserted in the reports, but to show that Crown engaged in a good faith decision-making process. *See Keisling v. SER–Jobs for Progress, Inc.*, 19 F.3d 755, 762 (1st Cir.1994) (affirming district court's decision to admit out-of-court statements because not being offered to prove truth of matter asserted, but to negate allegations of bad faith); *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 686 (11th Cir.1984) (affirming district court's decision to admit reports in a products liability action because reports offered only for purpose of showing notice, and not to prove truth of matters asserted in the reports). Therefore, for the purpose of showing Crown's good faith, the reports do not come within the definition of hearsay, and the majority's reliance on Rule 803 is misplaced.

where evidentiary rulings result in prejudice). While the district court allowed Crown's engineer to testify that he relied upon the views of outside consultants, the impact of the reports was lost because the jury was not allowed to review them directly. The jury was unable to observe that the reports were comprehensive and obviously prepared by experts in the field. Nor was the jury able to view the substance of the reports, which directly supports Crown's contention that it, in good faith, believed the addition of a door would make its forklifts *more* dangerous.

That the failure to admit the reports was prejudicial to the defendant is apparent when one considers the plaintiff's closing argument, where counsel argued that Crown did not "objectively reach a decision as to whether doors are a good thing or not." The reports Crown commissioned provide a direct and highly relevant counter-point to this argument, but because of their exclusion, Crown was left with no comeback. The jury might well have come to a different conclusion on the issue of punitive damages had the district court admitted the reports with a proper limiting instruction, and in my view, "the lower court's error tainted the verdict." *Tennison v. Circus Circus Enters., Inc.,* 244 F.3d 684, 688 (9th Cir.2001).

I am not unmindful of the fact that the district court, as it should, is afforded a great deal of discretion in making Rule 403 determinations. But that discretion is not unfettered. *See, e.g., United States v. Crosby,* 75 F.3d 1343, 1349(9th Cir.1996) (district court abused discretion in refusing to admit evidence pursuant to Rule 403); *United States v. Blaylock,* 20 F.3d 1458, 1464 (9th Cir.1994) (same); *Baker v. Delta Air Lines, Inc.,* 6 F.3d 632, 642 (9th Cir. 1993) (same); *United States v. Armstrong,* 621 F.2d 951, 953 (9th Cir.1980) (same). Where, as here, the probative value of the excluded evidence is great, and the danger

that the evidence will be considered for an improper purpose is slight, and easily mitigated by the issuance of a proper instruction, Rule 403 requires that the evidence should be admitted. *See* 2 James B. Weinstein et al., Weinstein's Federal Evidence § 403.02[2][c] (2d ed.2003) (discussing the preference under Rule 403 for admissibility).

In sum, I respectfully dissent from the decision to exclude the independent engineering reports. Because I would reverse for a new trial, I would not reach the issue as to whether the district court correctly denied the motion for a new trial on the issue of punitive damages.