Ronald L. KRAMER, Plaintiff–
Appellant,

v.

TOSCO CORPORATION, a Nevada corporation; Phillips Petroleum Company, a Delaware corporation; Conoco Inc., a Delaware corporation; Conoco-Phillips Company, a Delaware corporation, Defendants–Appellees.

No. 05–35351.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 2007.

Filed March 14, 2007.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Shelley D. Russell, Esq., Craig A. Crispin, Esq., Patty T. Rissberger, Esq., Crispin & Associates, Portland, OR, Robert W. Pike, Esq., Beaverton, OR, for Plaintiff–Appellant.

Carol J. Bernick, Elizabeth C. Knight, Esq., Joseph Vance, Timothy R. Volpert, Jeffrey J. Schick, Davis Wright Tremaine LLP, Portland, OR, for Defendants–Appellees.

Before: THOMPSON, KLEINFELD, and BYBEE, Circuit Judges.

## MEMORANDUM *

Appellant Ronald L. Kramer appeals the district court's judgment entered following a jury verdict in favor of Appellee Tosco Corporation[1] in his action alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et. seq.*, and Oregon's Disability Discrimination Act, Or.Rev.Stat. §§ 659A.100–.145,[2] and intentional infliction of emotional distress under Oregon state law. Kramer is a paraplegic who was employed at the time of his unrelated injury as a Head Operator at Tosco's petroleum tank farm terminal in Portland, Oregon. After Kramer completed his rehabilitation and received his doctor's authorization to return to work part-time, Tosco refused to allow him to return to his previous position and terminated him when he refused an alternate position in another location. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the judgment in favor of Tosco and the district court's denial of Kramer's Federal Rule of Civil Procedure 59(a) motion for a new trial.

Kramer contends that the district court erred by giving the following jury instruction: "[P]laintiff must prove by a preponderance of the evidence what the essential functions of the head operator position were at the time he was terminated, and that he was able to perform all of these essential functions with or without a reasonable accommodation." Although Kramer waited until the morning of the last day of testimony to raise his objection in the district court, he did not waive the objection to this instruction because he made the objection prior to the close of evidence. *See* Fed.R.Civ.P. 51(a)(1), (c)(2)(A).

We need not and do not decide whether it was error to place on Kramer the burden to define the essential functions of the Head Operator position and to establish that he could perform those functions. Even if there was error, it was harmless. *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1087 (9th Cir.2005).

In civil cases, reversal is not required if "the error is more probably than not harmless." *Swinton v. Potomac Corp.*, 270 F.3d 794, 805 (9th Cir.2001). In addition, we will not vacate a judgment when the party benefitting from the instructional error clearly satisfied its requisite burden of proof. *See Mockler v. Multnomah County*, 140 F.3d 808, 813 (9th Cir.1998); *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir.1990). A review of the evidence adduced at trial shows that Tosco clearly established that the rotating shift, tank farm duties, and emergency response responsibilities were essential functions of the Head Operator position, job-related, and consistent with business necessity.[3]

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. After Kramer filed suit, Tosco Corp. was acquired by Phillips Petroleum, which then merged with Conoco, Inc., to form Conoco-Phillips Co. For ease of reference, we refer to Appellee as Tosco.

2. Both parties agree that Oregon state law on disability discrimination is to be construed as consistent with the ADA. *See* Or.Rev.Stat. § 659A.139.

3. Although Tosco asserted an "undue hardship" defense at trial rather than a "business necessity" defense, the concepts are closely related. Because Tosco argued the relevant

In accordance with the regulations published by the Equal Employment Opportunity Commission ("EEOC"), Tosco introduced a job description written prior to Kramer's accident, the testimony of current and past head operators, the testimony of Kramer's direct supervisor, the testimony of an expert witness, and the testimony of the director of the Portland terminal, all of which established that head operators routinely perform tank farm tasks requiring full mobility and that these tank farm tasks are essential. *See* 29 C.F.R. § 1630.2(n)(3)(i)-(iii), (vi), (vii). Moreover, Kramer himself testified that prior to his accident, he frequently performed tank farm duties. Furthermore, the physical tasks incident to tank farm duties—opening and closing valves, climbing ladders, evacuating the tank farm, and starting and stopping pumps— are job-related and consistent with business necessity because they "substantially promote" Tosco's business needs and are "related to the specific skills and physical requirements of the sought-after position." *Cripe v. City of San Jose*, 261 F.3d 877, 890 (9th Cir.2001) (internal quotation marks omitted).

In addition, Tosco documented the extensive disruptions to its business operations that would occur if the head operator were not able to perform tank farm work during a time when the terminal operator is not on duty or is occupied doing other work. *See* 29 C.F.R. § 1630.2(n)(3)(iv). Tosco also adduced considerable evidence which detailed the catastrophic damage to the environment and to human health which could occur if an oil spill occurred during the four hour window when terminal operators are not on duty and the head operator would be physically incapable of assisting in the emergency response. *Id.*

facts, we may consider whether Tosco met its burden under the "business necessity" de-

■ We also conclude that the district court did not err by refusing to give Kramer's proposed jury instruction on the interactive process that would have stated, in part: "If you find that the defendant failed to engage in an interactive process with plaintiff, you may consider that as evidence of a failure to reasonably accommodate plaintiff." While the jury may consider whether the range of possible reasonable accommodations extends beyond those proposed when the employer fails to engage in the interactive process, *see Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1115–16 (9th Cir.2000), *rev'd and remanded on other grounds*, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002), failure to engage in that process is not itself evidence of failure to reasonably accommodate. There must first exist a reasonable accommodation that will enable the employee to perform the essential functions of the position. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137–38 (9th Cir.2001) ("Employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute *if* a reasonable accommodation would have been possible." (emphasis added)).

However, "[i]f a disabled person cannot perform a job's 'essential functions' (even with a reasonable accommodation), then the ADA's employment protections do not apply." *Cripe*, 261 F.3d at 884. Kramer's proposed instruction would have misled the jury into erroneously believing that there existed an independent cause of action for failing to engage in the interactive process. Tosco is not liable because, as the jury found, Kramer was not a qualified individual, with or without reasonable accommodation.

fense. *See Cripe v. City of San Jose*, 261 F.3d 877, 886 n. 9 (9th Cir.2001).

■ Kramer contends that the district court abused its discretion by refusing to order a new trial on the ground that Tosco had coerced one of Kramer's witnesses, Head Operator Rob Gross, into giving less favorable testimony by initiating disciplinary proceedings against Gross. *See Dorn v. Burlington N. Santa Fe R.R.*, 397 F.3d 1183, 1189 (9th Cir.2005). This contention lacks merit. Kramer fails to allege that Gross testified untruthfully, and Gross himself admitted in his post-trial deposition that he "answered the questions that were asked but I answered them short and to the point." There is no allegation that Tosco directly threatened Gross with losing his job if he did not testify in support of the company, and Kramer himself concedes that Gross's supervisor at Tosco instructed Gross to "just tell the truth." Moreover, Tosco transferred the responsibility for handling Gross's disciplinary matter from Gross's direct supervisor to the corporate human resources department, to avoid any possibility of improper coercion. The district court did not err in denying Kramer's motion for a new trial on this ground.

The district court did not abuse its discretion by excluding the testimony of Randy Canady. *See Geurin v. Winston Indus., Inc.*, 316 F.3d 879, 882 (9th Cir. 2002). Canady's position as a C Operator for the Tesoro refinery was markedly different from Kramer's position as a Head Operator at a bulk terminal that received petroleum shipments via land, pipeline, and water. Canady testified that the C Operators worked only in the control room and that there had never been any outdoor physical components to his job, whereas Head Operators at Tosco had always performed tank farm and emergency response duties that require full mobility. While the EEOC regulations governing what constitutes evidence of essential functions allow consideration of the work experience of employees performing the same or similar jobs, the regulations do not suggest that the work experience of employees performing other jobs at different facilities is relevant to this inquiry. *See* 29 C.F.R. § 1630.2(n)(3)(vi),(vii).

In addition, many of the pumps and valves at the Tesoro facility were automated and had remote shutdown switches, whereas very few of the valves at the Tosco facility were motorized. Because the Tesoro facility had already been automated prior to Canady's accident, Canady's testimony would have little bearing on what modifications would be reasonable to accommodate Kramer's disability. Furthermore, even if we were to conclude that the district court abused its discretion by excluding Canady's testimony, Kramer has not shown prejudice—that the exclusion of Canady's testimony more probably than not tainted the jury's verdict. *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1032 (9th Cir.2003).

■ Finally, we reject Kramer's contention that the jury verdict is not supported by "substantial evidence" and that the district court abused its discretion in denying his Federal Rule of Civil Procedure 59(a) motion for a new trial on this ground. *See Watec Co., Ltd. v. Liu*, 403 F.3d 645, 651 n. 5 (9th Cir.2005). Kramer faces a high bar in asking us to reverse the district court's ruling because "[a] district court's denial of a motion for a new trial after consideration of all the evidence is 'virtually unassailable' and is subject to reversal only if there is a complete absence of evidence supporting the jury's verdict." *Freund v. Nycomed Amersham*, 347 F.3d 752, 764 n. 13 (9th Cir.2003) (citing *Saman v. Robbins*, 173 F.3d 1150, 1154 n. 4 (9th Cir.1999)). There is no such absence of evidence here—Tosco adduced a written job description and extensive testimony of super-

visors, managers, expert witnesses, and head operators, all of which confirmed that the rotating shift, tank farm, and emergency response duties were essential functions of the Head Operator position, job-related, and consistent with business necessity.

**AFFIRMED.**