**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JILL LARSON; ROBBIN LARSON, | No. 16-16259 |
| Plaintiffs-Appellees, | D.C. No. 4:14-cv-01592-DCB |
| v. | |
| MARK NAPIER, Pima County Sheriff, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted June 8, 2017
Pasadena, California

Before: BEA and HURWITZ, Circuit Judges, and KOBAYASHI,** District Judge.

Jill and Robbin Larson ("the Larsons") were asleep at home on the night of

May 23, 2013, when deputies from the Pima County Sheriff's Department

surrounded their house and ordered them outside. The deputies were responding

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Leslie E. Kobayashi, United States District Judge for the District of Hawaii, sitting by designation.

to a 911 call from William Eugene Warfe, Jr., who had reported an altercation that may have involved a gun. Upon exiting, the Larsons were handcuffed and searched, and the deputies conducted a warrantless search of their home. In this 42 U.S.C. § 1983 suit against Mark Napier, Pima County Sheriff ("the Sheriff"), arising out of the May 23 incident, the jury found in favor of the Larsons and awarded damages.[1]

On appeal, the Sheriff does not contest that the deputies violated the Larsons' constitutional rights. The Sheriff challenges the district court's: (1) denial of his renewed motion for judgment as a matter of law; (2) denial of additional language to a Ninth Circuit jury instruction on municipal liability under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978); and (3) admission of evidence related to Warfe's previous 911 calls. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.      The Sheriff asserts that the district court should have granted his renewed motion for judgment as a matter of law because the Larsons did not show that the Sheriff's policy was unconstitutional on its face and the Larsons waived

---

[1] It is well-established that a suit against a government employee in his or her official capacity is a suit against the government entity itself. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

any argument on deliberate indifference. This Court reviews a denial of a motion for judgment as a matter of law de novo, determining "only if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (internal quotation marks omitted). Under § 1983, a municipality is liable for the tortious acts of its employees or agents only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Although the Sheriff does not have a written policy for either responding to reports of domestic violence or call out and containment – the procedure employed at the Larsons' home – there was ample evidence at trial of "practices so persistent and widespread as to practically have the force of law." *See id.* This evidence included: an admission by the Sheriff that the deputies complied with the department's policy; Bureau Chief Byron Gwaltney's testimony that, in a similar

3

situation, he would expect deputies to do the same thing;[2] Gwaltney's testimony that, in responding to Warfe's call about the Larsons, the deputies used tactics "taught and accepted as the department approach"; various deputies' testimony that they acted consistent with the standard procedures of the department; and the fact that the deputies followed the same procedure at the house next door shortly after the warrantless search of the Larsons' home.

Although the Sheriff argues that a general call out and containment procedure in and of itself is not unconstitutional, the record reflects that the district court based its ruling on the specific custom or practice of the Pima County Sheriff's Department – namely, seizing individuals and searching their homes before establishing a factual basis for doing so.

2.      The Sheriff claims that the district court incorrectly denied proposed language for the jury instruction on *Monell* liability. We "review a district court's formulation of civil jury instructions for an abuse of discretion, but we consider *de novo* whether the challenged instruction correctly states the law." *Wilkerson v. Wheeler*, 772 F.3d 834, 838 (9th Cir. 2014). The instruction given by the district court, the Ninth Circuit model jury instruction, accurately states the law and the

---

[2] Gwaltney is a member of the senior command and has at least partial responsibility for the department's policies and procedures.

Sheriff's proposed addition to the instruction was unsupported by case law. Accordingly, the district court did not err.

3.      Finally, the Sheriff argues that the district court erred in admitting records of Warfe's previous 911 calls because, when responding to emergency calls, deputies do not have a constitutional obligation to investigate the caller. This Court reviews evidentiary rulings for abuse of discretion. *McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1032 (9th Cir. 2003). At trial, the Larsons established that, *inter alia*: there was a database about a 911 caller's previous emergency calls; the general practice was for a deputy to check the database on the way to a potential crime scene; at least two sergeants traveled together to the Larsons' home; and Warfe's record included an alert that dispatch was supposed to pass on to responding deputies. Thus, the Larsons did not argue that the deputies had a constitutional obligation to search the database, but only that it was a general policy of the department. This information is relevant, *see* Fed. R. Evid. 402, and the district court did not abuse its discretion in denying exclusion under Fed. R. Evid. 403.

**AFFIRMED.**