**Jo Ann TENNISON; Cheryl C. Oliver, Plaintiffs–Appellants,**

v.

**CIRCUS CIRCUS ENTERPRISES, INC.; Colorado Belle Corp., Defendants–Appellees.**

**No. 99–16385.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 2000

Filed March 26, 2001

John J. Tofano, Las Vegas, Nevada, for the plaintiffs-appellants.

Cam Ferenbach, Lionel Sawyer & Collins, Las Vegas, Nevada, for the defendants-appellees.

Before: BOOCHEVER, O'SCANNLAIN and TASHIMA, Circuit Judges.

BOOCHEVER, Circuit Judge:

Plaintiffs Cheryl C. Oliver ("Oliver") and Jo Ann Tennison ("Tennison") (collectively, "Plaintiffs") brought suit against Defendants Circus Circus Enterprises, Inc. and the Colorado Belle Corp. (collectively, "Management" or "Defendants") for sexual harassment under Title VII and intentional infliction of emotional distress. The district court granted summary judgment in favor of Defendants on Plaintiffs' intentional infliction of emotional distress claims. At trial, the jury found against Plaintiffs on their sexual harassment claims. Plaintiffs appeal the summary judgment ruling as well as several evidentiary rulings made in connection with the trial.

## FACTS

Plaintiffs and co-workers Terri Fernandez ("Fernandez"), Christine Amato ("Amato") and Donna Meehan–Doss ("Doss"), as well as Mike Mejia ("Mejia"), the accused harasser,[1] worked as slot carousel attendants for Defendants. Slot carousel attendants assist casino customers by selling change, buying change and paying out jackpots. At trial, Oliver, Tennison, Fernandez, and Amato provided testimony to show that Mejia sexually harassed them during 1994 and 1995 and that Management failed to take adequate measures to remedy the problem.

### A. Evidence of Sexual Harassment and Complaints before 1994

Tennison testified at her deposition that, on several occasions in 1988 and 1989, Mejia asked her out. Each time Tennison said, "No." She also testified that, between 1988 and 1991, Mejia touched her inappropriately by rubbing her arm, brushing up against her, and thrusting his pelvis against her buttocks. According to Tennison, she complained to Management on one or two occasions, but Management ignored her concerns. Between 1991 and 1994, Tennison indicated she was not harassed, except for one incident. The parties dispute whether Tennison testified at her deposition that she complained during this latter time period.

Co-workers Doss and Bilyeu also testified at deposition that Mejia sexually ha-

---

1. Mejia was originally named as a defendant but Plaintiffs dismissed him from the lawsuit shortly before trial.

rassed them in 1988 and 1989 and that they complained to Management.

## B. Evidence of Sexual Harassment and Complaints after August 1994

Tennison testified at trial that Mejia sexually harassed her in 1994 and 1995 by holding her waist, brushing up against her, rubbing her arm and blocking her way to force physical contact with him. These incidents, according to Tennison, occurred two to five times a night. Tennison also testified that Mejia kissed her on one occasion. In late February 1995, Tennison asked to be reassigned to another area in the casino away from Mejia. A few days later, Tennison submitted a written statement to Management complaining about Mejia's conduct.

Oliver testified that Mejia sexually harassed her during the same time period by regularly walking behind her and rubbing his hand across her buttocks. Each time she told Mejia to stop. Oliver also testified that Mejia pinched her buttocks in December 1994 or January 1995 and that she complained to her manager about the incident. Doss, a coworker, testified that she saw the incident and saw Oliver curse at Mejia, then run out of the room crying. In late February 1995, Oliver, like Tennison, submitted a written statement to Management complaining about Mejia's conduct.

Fernandez, also a co-worker, testified that Mejia sexually harassed her by hugging her from behind, rubbing her shoulders, kissing her on the cheek, brushing up behind her with his pelvis, and on one occasion, touching her breast. In addition, Fernandez testified that she saw Mejia touch other co-workers inappropriately. In late February 1995, she also submitted a written statement concerning Mejia's conduct.

Amato, another co-worker, testified that Mejia touched her breast on one occasion in mid-March 1995 and that she complained to Management. Amato also stated that one of the reasons she complained

was that Management failed to respond to the concerns of Tennison, Oliver and Fernandez. Doss testified that she complained to Management several times about Mejia's conduct toward Tennison, Oliver and Fernandez.

Mejia denied the allegations, testifying that he never touched Tennison, Oliver, Fernandez or Amato in a sexual or otherwise inappropriate manner and that no one told him that his conduct was unwelcome.

## C. Management's Response to Complaints

Management responded in early March 1995 by informing Mejia of the complaints and instructing him not to touch female co-workers or retaliate against those that complained. Tennison testified that Management waited almost three weeks before informing Plaintiffs of any investigation or action taken with respect to Mejia. It was only after Amato complained in mid-March that Management met with Plaintiffs. Tennison also testified that Management representatives indicated they believed the incidents were not severe.

In mid-March, Management placed Mejia on a 16–day investigative suspension with pay as well as a 3–day suspension without pay. Oliver and Fernandez requested not to work with Mejia upon his return from suspension. According to Tennison, Management responded by saying that, if they did not want to work with Mejia, they could sell change on the floor or go home. Tennison also testified that one Management representative rhetorically asked, "Do you think that Mejia should be punished for one mistake?" Management denied making the above comments. When Mejia's suspension ended, he was placed on a different shift, but returned to his old shift approximately one month later.

Mejia refrained from inappropriately touching Plaintiffs after he was disciplined in March 1995. Both Tennison and Oliver, however, testified that from May 1995

through August 1996 (when Mejia's employment was terminated), Mejia repeatedly glared at them, stood nearby to intimidate them, sat next to them in the employee dining room, and one time waited for them outside the restroom. Mejia denied engaging in any conduct designed to intimidate Plaintiffs or make them feel uncomfortable.

Oliver and Tennison testified that Management ignored their numerous complaints concerning Mejia's post-disciplinary conduct. Specifically, Plaintiffs testified that Management representatives responded by making comments, such as, "nothing can be done," "okay, honey, don't let yourself get too upset," or otherwise indicating that they did not want to be bothered. Plaintiffs testified that Management never requested a written statement and never contacted them regarding these later complaints. Management denied making the above comments and testified that its representatives immediately counseled Mejia to stop engaging in such behavior.

Tennison, Oliver and another co-worker, Bilyeu, testified at deposition that, on one or two occasions after Mejia returned from his suspension, they observed pictures of women in bikinis taped to the inside Mejia's locker.

Management terminated Mejia's employment in August 1996 after a customer complained about inappropriate sexual comments.

## DISCUSSION

### I. Exclusion of Evidence

Plaintiffs appeal the trial court's evidentiary rulings excluding: (1) testimony from Tennison regarding sexual harassment and complaints before 1994, (2) testimony from co-workers Doss and Bilyeu regarding sexual harassment and complaints before 1994, and (3) testimony from co-worker

Bilyeu regarding pictures of women in bikinis posted inside Mejia's locker at work.

■ The district court based these evidentiary rulings on Rule 403 of the Federal Rules of Evidence.[2] Such rulings are reviewed for an abuse of discretion. *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996) ("The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion."). To reverse a jury verdict for evidentiary error, Plaintiffs must also show the error was prejudicial. *Heyne v. Caruso*, 69 F.3d 1475, 1478 (9th Cir.1995). A reviewing court should find prejudice only if it concludes that, more probably than not, the lower court's error tainted the verdict. *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 888 (9th Cir.1991).

### A. Tennison's Testimony Regarding Sexual Harassment and Complaints before 1994

■ Plaintiffs argue that the trial court committed reversible error by granting Defendants' motion in limine excluding Tennison's testimony and other evidence regarding sexual harassment and complaints before 1994. The court had previously determined, in a motion for summary judgment, that these earlier events fell outside the statute of limitations and that the continuing violations doctrine did not apply. (Plaintiffs do not appeal this summary judgment ruling.)

Plaintiffs characterize the trial court's ruling on the motion in limine as final. The trial court, however, made clear the ruling was *tentative*. The order states, "The granting of this motion will not preclude plaintiffs from renewing their request to introduce some or all of this evidence outside the presence of the jury." Shortly before trial, the judge stated that,

---

**2.** Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

if the Defendants "opened the door," he would allow Plaintiffs to use the evidence of earlier harassment in cross-examination or rebuttal. On the first day of trial, and again on the second, the court reiterated this sentiment. In fact, in a pre-trial motion, Plaintiffs themselves expressly acknowledged that, "This court has not unconditionally excluded evidence of events prior to August 20, 1994 of Mejia's sexual harassment." They continued, "What the Court has done is direct the parties to offer the evidence at trial, where an admissibility determination will be made at that time."

■ Despite the trial judge's invitation to make an offer of proof at trial, Plaintiffs never did. "[W]here a district court makes a tentative in limine ruling excluding evidence, the exclusion of that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial." *Walden v. Georgia–Pac. Corp.*, 126 F.3d 506, 518 (3rd Cir.1997); *accord Jenkins v. Keating*, 147 F.3d 577, 582 (7th Cir.1998) ("[T]he party against whom the conditional in limine ruling is made must … attempt to present the evidence, most likely through an offer of proof outside the presence of the jury, in order to preserve the issue for appeal."); *see also Katz v. Regents of Univ. of Cal.*, 229 F.3d 831, 837 (9th Cir.2000) ("[P]laintiffs' failure to make an offer of proof-particularly once invited to do so by the district court-precludes consideration of those contentions."); *Scott v. Ross*, 140 F.3d 1275, 1285 (9th Cir.1998) (offer of proof required because ruling on motion in limine lacked "necessary definitiveness").

Because Plaintiffs failed to make an offer of proof, or otherwise attempt to introduce Tennison's testimony regarding sexual harassment and complaints before 1994, Plaintiffs cannot challenge the exclusion of that evidence on appeal.

## B. Doss' and Bilyeu's Testimony Regarding Sexual Harassment and Complaints before 1994

■ Unlike the evidence discussed above, Plaintiffs did make an offer of proof at trial to introduce testimony from Doss and Bilyeu, two of Plaintiffs' co-workers. Doss and Bilyeu would have testified that Mejia harassed them in 1988 and 1989 and that they complained to Management. The trial court excluded the evidence under what appears to be a Rule 403 balancing test.

Plaintiffs offered the testimony as background evidence for their hostile work environment claims. Even if this testimony were relevant for this purpose,[3] it would have little probative value. The alleged instances of harassment and complaints did not involve Plaintiffs and they occurred over five years before the statute of limitations cut-off date. Any probative value this evidence might have is further diminished, as the trial court noted, by the court's admission of a significant amount of more recent evidence regarding other co-workers, including Fernandez, Amato and three other women.[4]

■ Plaintiffs also offered Doss' and Bilyeu's testimony as proof that Management had early notice of Mejia's improper conduct, but failed to take adequate remedial measures. *See Mockler v. Multnomah County*, 140 F.3d 808, 812 (9th Cir. 1998) (plaintiff must show employer knew or should have known of co-worker harassment and employer failed to take effective

---

**3.** *Cf. Anderson v. Reno*, 190 F.3d 930, 935 (9th Cir.1999) (noting that untimely claims may serve as relevant background evidence to put timely claims in context).

**4.** In addition to offering Doss' and Bilyeu's testimony to provide context, Plaintiffs offered the evidence to impeach Mejia's credibility concerning his statement that he had not received any past complaints about harassment. The trial court indicated that the testimony constituted extrinsic evidence on a collateral issue and, therefore, was inadmissible for purposes of impeachment. Plaintiffs' attorney apparently conceded this point during the colloquy in the trial court.

remedial action). For this purpose, Doss' and Bilyeu's testimony that they complained to Management about Mejia's conduct in 1988 and 1989 does have probative value. While remote in time and made by non-parties, the complaints involved the same alleged harasser and gave Management at least constructive notice, if not actual notice, that Mejia was a repeat offender. As such, the testimony supports Plaintiffs' contention that Management should have taken more drastic measures when Tennison, Oliver, Fernandez and Amato complained in early 1995, and when other complaints were made later in the same year. Contrary to Defendants' assertion, this evidence is not merely cumulative, as no other evidence indicates that Management had notice of Mejia's behavior before Plaintiffs complained in 1995.

Although the testimony is probative for this purpose, the trial court enjoys considerable discretion in determining whether to exclude evidence under Rule 403 for unfair prejudice. *See Trevino*, 99 F.3d at 922. Here, admitting Doss' and Bilyeu's testimony might have resulted in a "mini trial," considering that much of their testimony was disputed by Defendants. The trial court could reasonably conclude this would be an inefficient allocation of trial time. In addition, the trial court could reasonably conclude that admitting Doss' and Bilyeu's testimony, along with Defendants' rebuttal evidence, would create a significant danger that the jury would base its assessment of liability on remote events involving other employees, instead of recent events concerning Plaintiffs. Finally, the trial court suggested that the exclusion of the more remote incidents of harassment and complaints would help mitigate the prejudice Defendants might encounter

as a result of Plaintiffs' prosecution of a joint trial.

While Doss' and Bilyeu's testimony may be probative, it also presented a legitimate and substantial risk of unfair prejudice to Defendants. The trial court could reasonably conclude that the unfair prejudice substantially outweighed the probative value. *See* Fed.R.Evid. 403. The trial court did not abuse its discretion.

### C. Bilyeu's Testimony Regarding Pictures of Women in Bikinis

■ Plaintiffs argue that the trial court committed reversible error by excluding Bilyeu's testimony that Mejia posted pictures of women in bikinis on the inside of his locker at work. Plaintiffs did not offer their own testimony regarding the pictures, or offer the pictures themselves, to show the existence of a hostile work environment. Having failed to make this showing, Plaintiffs are precluded from challenging the exclusion of this evidence on this basis. *See Walden*, 126 F.3d at 518; *Scott*, 140 F.3d at 1285.[5]

Plaintiffs, however, did offer this evidence as proof that Management failed to take adequate remedial action after Plaintiffs complained in February 1995. During the offer of proof, Plaintiffs' counsel informed the district court that they lacked evidence that anyone informed Management of the pictures. The trial court could properly conclude that Management was not aware of the pictures and that the pictures were not probative of Management's inadequate remedial action.[6] In addition, Mejia volunteered information about the pictures on cross examination, thereby mitigating any possible harm to Plaintiffs caused by the court's exclusion of this evidence.

---

5. Even if Plaintiffs were entitled to present a challenge on this relevance theory, it is unlikely they would succeed. The pictures add very little to Plaintiffs' showing of a hostile work environment as Plaintiffs saw the photographs on only one or two occasions and only for a brief period of time.

6. Earlier, in connection with the motion in limine on this point, Plaintiffs' counsel represented that Oliver did complain to Management. The trial court, however, was entitled to rely on counsel's latter representation that Management was never informed.

Accordingly, the district court did not commit reversible error by excluding Bilyeu's testimony regarding the pictures of women in bikinis inside Mejia's locker at work.

## II. Summary Judgment on Intentional Tort Claims

Plaintiffs argue that the trial court erred in entering summary judgment denying their claims for intentional infliction of emotional distress. In barring Plaintiffs' intentional tort claims, the court relied on the common law rule that the release of one joint tortfeasor (*i.e.*, Mejia) serves to release all other joint tortfeasors (*i.e.*, Circus Circus Enterprises, Inc. and Colorado Belle Corp.). *See Van Cleave v. Gamboni Constr. Co.*, 99 Nev. 544, 665 P.2d 250, 252 (1983). Plaintiffs, who originally named Mejia as a defendant, dismissed him with prejudice shortly before trial.

Assuming for the sake of argument that the court did err, Plaintiffs fail to articulate how they were prejudiced by this ruling. Their intentional infliction of emotion distress claims are predicated on the same facts and similar legal inquiries as their sexual harassment claims. Considering that the jury found against Plaintiffs on their sexual harassment claims, it is highly unlikely the jury would have found in favor of Plaintiffs on their intentional tort claims. As such, any error committed by the trial judge was harmless. *See, e.g., Fite v. Digital Equip. Corp.*, 232 F.3d 3, 6 (1st Cir.2000) (summary judgment dismissing state-law discrimination claims was harmless because jury rejected federal discrimination claims based on similar facts and legal theories).

Accordingly, the trial court did not commit reversible error by entering summary judgment against Plaintiffs on their claims for intentional infliction of emotional distress.

As the prevailing party, Defendants are entitled to costs on appeal. *See* Fed. R.App. P. 39. Because Plaintiffs' appeal was not frivolous, unreasonable or without foundation, we deny Defendants' request for attorney's fees. *See* 42 U.S.C. § 1988; *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir.1994).

AFFIRMED.