347 F.3d 1170
 Sylvester James MAHONE, Plaintiff-Appellant,
v.
Joseph LEHMAN; Dave Savage; Richard Lee Morgan; Kathy Kaatz; Robert Crocker; Bradley Hatt; Mike Leahy; Brooks, Sgt.; Nicholas, Sgt.; Robert Monger, Defendants-Appellees.
 No. 02-35622.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted August 7, 2003 — Seattle, Washington.
 Filed October 30, 2003.
 
 Ben Wizner, ACLU Foundation of Southern California, Los Angeles, California, for the plaintiff-appellant.
 Michael T. Mitchell, and Aileen Miller, Office of the Attorney General, Criminal Justice Division, Olympia, Washington, for the defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington; Franklin D. Burgess, District Judge, Presiding. D.C. No. CV-98-05412-FDB.
 Before: Arthur L. ALARCÓN, Ronald M. GOULD, and Richard R. CLIFTON, Circuit Judges.
 Opinion by Judge ALARCÓN; Dissent by Judge CLIFTON.
 OPINION
 ALARCÓN, Circuit Judge.
 
 
 1
 In this civil rights action, filed pursuant to 42 U.S.C. § 1983, Sylvester James Mahone seeks reversal of the judgment entered in favor of each of the Appellees following a trial by jury. In his pro se complaint, Mr. Mahone alleged that, while an inmate at Washington State's Clallam Bay Correctional Center ("CBCC") prison, he was placed in solitary confinement in a bare strip cell, without clothing, property, or regular access to running water in violation of the Eighth Amendment. Mr. Mahone contends that the district court committed prejudicial error in admitting hearsay evidence, and in failing to correct defense counsel's misstatements in her closing argument regarding the proof required to demonstrate deliberate indifference to an inmate's health and safety.
 
 
 2
 We reverse because we conclude that admission of hearsay testimony was prejudicial. We also hold that defense counsel misstated the standard for deliberate indifference.
 
 
 3
 * On February 2, 1998, Mr. Mahone, then an inmate at CBCC, extracted a piece of steel rebar from a cement partition in his cell and used it to cause substantial damage to his maximum custody Intensive Management Unit ("IMU") cell and its fixtures. He testified that his destructive behavior was caused by the fact that a correctional officer spit in his food. Because of his behavior, correctional staff modified the conditions of his confinement by placing him in a strip cell without clothing, toilet paper, or any personal items. Mr. Mahone was removed from confinement in the strip cell on February 12, 1998.
 
 
 4
 Mr. Mahone filed this § 1983 action in the district court on July 19, 1998, against the Appellees. The Appellees filed a motion for summary judgment. The district court denied the motion and appointed pro bono counsel for Mr. Mahone. On May 18, 2001, the Appellees again filed a motion for summary judgment. The district court granted the motion for summary judgment regarding the Appellees' actions in removing Mr. Mahone from his cell, and denied the motion regarding the alleged Eighth Amendment violations resulting from his confinement in a strip cell.
 
 
 5
 After a trial on the merits of his claim, the jury returned a verdict in favor of the Appellees. Mr. Mahone filed a pro se motion for a new trial. The motion for a new trial was denied. Mr. Mahone filed a timely notice of appeal on June 21, 2002.
 
 II
 
 6
 Mr. Mahone contends that the district court abused its discretion in admitting, over an objection, hearsay testimony of the opinion and diagnosis of a psychiatrist concerning the effect on Mr. Mahone of his confinement in the strip cell. Mr. Mahone argues that this error was prejudicial because it undermined his credibility as a witness and cast doubt on his claims of injury.
 
 
 7
 "We review the district court's construction of the hearsay rule de novo and its decision to exclude evidence under the hearsay rule for an abuse of discretion." Orr v. Bank of Am., NT & SA, 285 F.3d 764, 778 (9th Cir.2002). "To reverse a jury verdict for evidentiary error, Plaintiffs must also show the error was prejudicial. A reviewing court should find prejudice only if it concludes that, more probably than not, the lower court's error tainted the verdict." Tennison v. Circus Circus Enters., 244 F.3d 684, 688 (9th Cir. 2001) (citation omitted).
 
 
 8
 Mr. Mahone was called as a witness to testify regarding the conditions of his confinement in the strip cell and the psychological harm he suffered as a result. On February 2, 1998, as punishment for damaging his cell, correctional officers cut off Mr. Mahone's clothing and placed him in a strip cell. The temperature in the cell was approximately 50 to 55 degrees. His bed was a concrete slab. He was never furnished a mattress. Mr. Mahone testified that "it felt like I was sitting inside a freezer." Because he was so cold in the strip cell, Mr. Mahone said he did not sleep for more than ten minutes during the first three days of his modified confinement.
 
 
 9
 Since he did not have any paper, Mr. Mahone could not file a medical emergency grievance based on the failure to provide him any clothing or a blanket to ward off the cold temperature in the cell. He called out to a fellow prisoner to file a grievance for him because Mr. Mahone thought he was going to die.
 
 
 10
 On February 3, 1998, a nurse visited Mr. Mahone's cell. Prior to her arrival, he received some underwear. Mr. Mahone told her he needed a blanket because his feet were numb and might be frostbitten. The nurse recommended to the correctional officers who were present that Mr. Mahone receive a blanket.
 
 
 11
 After the nurse left his cell, Mr. Mahone was required to remove his underwear and drop it outside his cell. Mr. Mahone received a blanket, as recommended by the nurse. The next day, the blanket was taken away from him.
 
 
 12
 On February 5, 1998, Mr. Mahone received underwear, a shirt, socks, and a blanket. Correctional officers refused to turn the water on for the first three days he was in the strip cell. The only water in the strip cell during that time was in the toilet.
 
 
 13
 Mr. Mahone received two bologna sandwiches, a piece of fruit, and a cookie for breakfast, lunch, and dinner. Mr. Mahone testified he could not eat these meals because he "didn't have water to swallow the food."
 
 
 14
 On February 5, 1998, the water was turned on for five minutes or less each day. However, he was not given any toilet paper during his strip cell confinement. As a result, he had human waste matter on his body. He was not allowed to take a shower until February 9, 1998, or February 10, 1998. The modified conditions of confinement were lifted and he was removed from the strip cell on February 12, 1998.
 
 
 15
 Mr. Mahone testified that he became depressed during this confinement and thought he "was going to die up there at certain points of time, without any water, freezing up in the cell." He also stated that he had "contemplated suicide just to escape the pain and torture that [he] felt." Mr. Mahone further testified that he continues to have serious problems as a result of this experience. His ability to communicate with others has been affected. He can no longer hold a job in the penitentiary. He stated that he now snaps at correctional officers and gets into lots of fights.
 
 
 16
 During the cross-examination of Mr. Mahone, defense counsel asked the following question: "Mr. Mahone, have you received any diagnosis from any mental health provider or therapist regarding mental and emotional suffering that was a result of your stay in the modified conditions of confinement?" Mr. Mahone replied: "Yes, I have gotten some. I don't know too much of the corpus of the diagnosis, not too much of it."
 
 
 17
 Appellees' counsel than posed the following question: "Can you tell the jury what you've been diagnosed as?" Mr. Mahone's counsel objected on the ground that the question called for hearsay. Before defense counsel could respond, the court stated: "Well he knows what he's been seeing a doctor for, so he can say." Mr. Mahone responded to defense counsel's question as follows:
 
 
 18
 Well, I was interviewed by some Western State Hospital staff because I got charged in the incident of tearing up the cell. I have pled not guilty by reason of insanity because at the time I didn't know what I was doing; it was a mental reaction, a reflex.
 
 
 19
 The Western State Hospital psychiatrist — it was about three and one student came to diagnose me, and they said that they believed that I was faking it, and then they gave a real — then they gave a real diagnosis saying I was an anti-sociopathic, something, something.
 
 
 20
 In other words, in the beginning they said that my symptoms that I was experiencing was a fake, that I was lying. And then the last part of their diagnosis, they diagnosed some type of mental illness actually, and it was something to the effect of anti-sociopathic behavior, something, something, big collegiate words, psychiatric collegiate words. I can't say them all.
 
 
 21
 Mr. Mahone's counsel renewed his hearsay objection to the question, moved to strike the answer, and requested that the jury be admonished to disregard it. The court did not expressly rule on the renewed objection or the motions. Instead, the court stated: "Well, he doesn't have to go into any hearsay. He can just answer why he went to see the doctor." In light of the fact that Mr. Mahone's response was already before the jury, the court's failure to grant the motion to strike the answer because it contained inadmissible hearsay is incomprehensible.
 
 
 22
 We are persuaded that the district court erred as a matter of law in concluding that the therapist's diagnosis of Mr. Mahone's mental state was not hearsay. In defending the district court's ruling on admissibility, Appellees argue that the extra-judicial diagnosis was admissible "to establish whether or not Mr. Mahone was justified in claiming significant mental trauma" resulting from the conditions of his confinement in the strip cell. Id. at 9.
 
 
 23
 In Orr, 285 F.3d 764, we held that an extra-judicial statement is hearsay and inadmissible "when the immediate inference the proponent wants to draw is the truth of assertion on the statement's face...." Id. at 779 n. 26 (quoting Edward J. Imwinkelried, Evidentiary Foundations 312 (4th ed.1998)). The plaintiff in Orr argued that the out-of-court statements made by a third party were solicited by the defendants so that the jury could draw a particular inference. Id. at 779. We held in Orr that, "[a]lthough [the evidence] was not offered to prove the truth of the matter asserted, it [was] nonetheless hearsay[,]" because the inference the plaintiff sought to draw, "depend[ed] on the truth of [the third party's] statement...." Id. (citing Fed.R.Evid. 801(c); United States v. Jefferson, 925 F.2d 1242, 1252-53 (10th Cir. 1991); United States v. Cowley, 720 F.2d 1037, 1044-45 (9th Cir.1983)).
 
 
 24
 Appellees have conceded that the extra-judicial statement was offered to prove that Mr. Mahone "was not justified in claiming significant mental trauma." Brief for Appellees at 9. The jury could only draw this inference, however, if it believed the therapist's opinion that Mr. Mahone was lying about the impact of his confinement in the strip cell. Under the law of this circuit, we conclude that the district court erred in admitting the therapist's opinion.
 
 
 25
 Having determined that inadmissible hearsay was admitted by the court, we must decide whether the error was prejudicial. Appellees argue that the testimony was harmless because there was already sufficient evidence "that Mr. Mahone was lying, exaggerating and making up testimony as he went along." Id. at 12. Nonetheless, Appellees forthrightly concede that "the response to the question [regarding the therapist's diagnosis] contained irrelevant and prejudicial testimony." Letter Brief for Appellees at 1 (July 17, 2003). The diagnosis that Mr. Mahone was "lying" concerning his symptoms was devastating to the credibility of Mr. Mahone's testimony that he suffered serious harm as the result of his confinement in a strip cell. The court's rulings compelled Mr. Mahone to impeach his own credibility through the unchallenged statements of an out-of-court declarant. We conclude that he is entitled to a new trial because he was prejudiced by the admission, over objection, of the therapist's opinion concerning Mr. Mahone's credibility, the district court's failure to grant his motions to strike the testimony, and to instruct the jury to disregard the extra-judicial statement.[1]
 
 
 26
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 Because we conclude that a new trial is required for the reasons stated above, we need not reach, and do not decide, whether appellant's challenge to the closing argument of appellees' trial counsel, in its discussion of the "deliberate indifference" standard, can be considered in the absence of a contemporaneous objection to the closing argumentSee Bird v. Glacier Elec. Coop. Inc., 255 F.3d 1136, 1148 (9th Cir.2001) ("We will review for plain or fundamental error, absent a contemporaneous objection or motion for a new trial before a jury has rendered its verdict, where the integrity or fundamental fairness of the proceedings in the trail court is called into serious question."). This a strict standard, following our prior suggestion, that there is a "high threshold" before objection to closing argument will be considered when raised only after trial is complete. Kaiser Steel Corp. v. Frank Coluccio Constr. Corp., 785 F.2d 656, 658 (9th Cir.1986); see also Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1193 (9th Cir. 2002); id. at 1206-10 (Gould, J. dissenting). We trust that in the event of a retrial before a jury, Mr. Mahone's counsel will make a contemporaneous objection if he or she believes that defense counsel has misstated the law in closing argument so that the district court can determine in the first instance whether error has occurred.
 
 
 
 27
 CLIFTON, Circuit Judge, dissenting.
 
 
 28
 I concur in the conclusion of the majority that the testimony in question was hearsay and should have been excluded from the evidence at trial. With respect, though, I part company with the majority on the issue of actual prejudice. As properly noted by the majority, ante at 1172, we should reverse a jury verdict for evidentiary error only if "more probably than not, the lower court's error tainted the verdict." Tennison v. Circus Circus Enters., 244 F.3d 684, 688 (9th Cir.2001); see also McEuin v. Crown Equipment Corp., 328 F.3d 1028, 1032 (9th Cir.2003). My review of the record suggests that it is highly unlikely that the evidentiary error had any impact on the jury's verdict. Thus, I would affirm.
 
 
 29
 To put it into context, I note that the offending testimony consists of one brief exchange — one question and one response — on day 3 of a 6-day trial. It was recorded in a few lines on one page of a trial transcript of 849 pages. Crucial testimony need not be lengthy, of course, but there is nothing to suggest that this single answer was a smoking gun. To the contrary, it appears that it was never mentioned again during the trial. The psychiatrist was never identified or given a name. No further description was ever given of the "diagnosis" or regarding the basis for it. Thereafter, there appears to have been no reference whatsoever during the trial to this psychiatrist or his opinion that Mr. Mahone was "faking it." Notably, the defense attorney made no reference of any kind to that testimony during the closing argument.
 
 
 30
 I do not disagree with the majority as to the importance of Mr. Mahone's credibility to his case. Mr. Mahone could not possibly prevail if the jury did not believe him. But that is not enough to establish actual prejudice. If it were, the test would simply be whether the disputed testimony pertained to a material issue, in this case, Mr. Mahone's credibility. That is not the standard, however.
 
 
 31
 Simply put, there is nothing to suggest that the testimony that an unnamed psychiatrist thought that Mr. Mahone was "faking it" had any impact on the jury's decision not to believe him, let alone that it "more probably than not" affected the outcome. There was an enormous amount of other evidence put before the jury which permitted it to make its own evaluation of Mr. Mahone's credibility. It would serve no useful purpose to detail that evidence here. Suffice it to say that the factual story which he told — and which the majority opinion essentially adopts as fact — was sharply contradicted by other witnesses and exhibits. Defendants' closing argument explicitly addressed the issue of Mr. Mahone's credibility, not by mentioning anything related to this testimony or, for that matter, referring to any other person's opinion on the subject, but rather by discussing the specific evidence which conflicted with Mr. Mahone's testimony. It is obvious from the verdict that the jury did not believe Mr. Mahone's testimony, but it is quite unlikely that the jury's disbelief was based upon the failure to strike the hearsay testimony. There was no shortage of reasons why the jury did not believe Mr. Mahone.
 
 
 32
 This could not be described as a case where the evidence was closely balanced and where something as limited and tangential as the challenged hearsay statement could have made the difference. The jury did not agonize over the evidence. Rather, the 8-member jury reached a unanimous verdict in favor of defendants in near-record speed: after a 6-day trial, it retired to deliberate at 10:49 a.m. and was back in open court with its verdict at 2:25 p.m. the same day. Even if it passed up lunch (the record is not clear on that), it is plain that the jury did not have any difficulty finding in favor of defendants.
 
 
 33
 It is especially unreasonable to conclude that what really moved the jurors was the brief reference to the unnamed state hospital psychiatrist's opinion. Not only was it never mentioned again, but Mr. Mahone had already given an explanation to discount any opinion from that psychiatrist. Prior to giving the testimony at issue, Mr. Mahone said three times that he did not trust counselors or psychiatrists affiliated with the prison, and further testified that "you can't really divulge too much of your information" to them. Mr. Mahone may not have felt comfortable repeating the diagnosis that he was "faking it," but his testimony certainly did not amount to a concession to that effect on his part.
 
 
 34
 Nor is it appropriate to rely, as the majority does, ante at 1174, upon the defendants' purported concession that the disputed testimony was "prejudicial." It is obvious that the defendants have merely acknowledged that the testimony weighed against Mr. Mahone, to the extent that it had any effect at all. But they have not agreed that it had an actual effect, let alone that its effect was, more probably than not, to taint the jury's verdict. I cannot conclude that it was.
 
 
 35
 I respectfully dissent.