

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-13-2006

# USA v. George

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3000

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. George" (2006). *2006 Decisions.* Paper 104.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/104

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3000
_____

UNITED STATES OF AMERICA

v.

ALVIN W. GEORGE, JR.,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 03-cr-00299)
District Judge:  Honorable James F. McClure, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
December 11, 2006

Before:  FISHER and CHAGARES, *Circuit Judges*,
and BUCKWALTER,* *District Judge*.

(Filed  December 13, 2006)
_____

OPINION OF THE COURT
_____

---

*The Honorable Ronald L. Buckwalter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

FISHER, *Circuit Judge*.

Alvin George, Jr. was charged by a superceding indictment with five counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a). Following a four-day jury trial, George was convicted on all five counts of the indictment. After the District Court denied his motion for a new trial, he was sentenced to 60 months in prison. He now appeals his conviction. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons below, we will affirm his conviction.

I.

As we write only for the parties, who are familiar with the factual context and the procedural history of the case, we will set forth only those facts necessary to our analysis. In July 2003, authorities were alerted by Yahoo!, an internet service provider, that an individual using the screen name "tinylittlepus" was downloading child pornography. A follow-up investigation revealed that the account owner was listed as a "Ms. Al George," who resided in Lock Haven, Pennsylvania, and was born on July 21, 1977, the same place of residence and date of birth as the defendant. After obtaining a search warrant for the George residence, federal investigators searched the house and discovered a computer containing images of child pornography. George was arrested and charged for possessing the illegal images.[1]

_____

[1]George does not contend on appeal that the images did not constitute child pornography. He only contests whether he was the person who downloaded them.

Evidence at trial indicated that George lived at the address in Lock Haven during the time the pornography was downloaded and shared the household with only one other adult, Brenda Smartwood. In addition, George's teenaged cousin, Nicole Vincent, had lived at George's house for part of the summer of 2003. Vincent testified that she and her friends used the computer, but she did not download or access child pornography nor did her friends download it in her presence. Smartwood likewise testified that she never downloaded child pornography.

Evidence at trial also indicated that George utilized a Yahoo! account, "alvingeorge1," for regular email activity. After midnight on September 25, 2003, shortly before several pornographic images were downloaded, George updated the profile of his Yahoo! account registered under alvingeorge1. Further, emails were received by tinylittlepus@yahoo.com from an e-mail address registered to Alvin George, alving@adelphia.net. Three days before the emails were sent, George used the Adelphia email account to seek work doing odd jobs from another individual.

At trial, George testified that he knew little about computers, that Smartwood used the computer more often, and that she often organized his email for him. Additionally, he claimed that he had an alibi for some of the times at which child pornography was downloaded to his computer. To support that contention, he introduced into evidence yellow pay-stubs that included the words "Alvin's hrs." or "Alvin" at the top. Each receipt contained the days and hours George allegedly worked for John Cebulka, who owned and operated an asphalt paving operation. George admitted that he was the person

3

who filled out the days and times on each receipt. When he testified, Cebulka supported George's contention that George had worked for him, but indicated that George only worked for him a few times during 2003 and did not work for him the number of hours he claimed. Cebulka also testified that he had never used pay stubs like the ones George had produced, nor was the handwriting on those stubs his.

George also claimed that on a day that an image was downloaded he was in court for a contempt proceeding. However, evidence indicated that, while he was in court at 3:25, he lived close enough to the courthouse to have walked home and used his computer at 3:47, the time at which the image was downloaded.

At the beginning of George's trial testimony, his attorney attempted to bolster George's claim that he did not know the password to the "tinylittlepus" account by introducing a handwritten note George had left on the computer in February of 2003. The note was addressed to "Nicki and Friends," and requested that they take cups and dishes down with them after using the computer and put his screen name and password back into Yahoo! when they were done as he had struggled to sign on to his account after one of them had used his computer. The government objected to the evidence as self-serving, inadmissible hearsay. Defense counsel responded by telling the District Court that the note was the original, but never asserted a non-hearsay purpose for the note. The District Court sustained the objection and excluded the evidence.

At the close of evidence, the prosecutor began his closing statement by defining voyeur and indicating that George was a voyeur; he then indicated that George's motive

4

for downloading the images was sexual gratification. Shortly thereafter, the prosecutor indicated that this was "an excellent investigation," "one of the finest investigations in a case like this that I have seen." There was no objection. The prosecutor then stated that Agent Kyle, one of the federal investigators, "did an incredible job in this case." At this point, George's attorney objected. The District Court sustained the objection and directed the prosecutor to refrain from any other personal evaluations of the agents' work or testimony. The District Court instructed the jury that the prosecutor's opinions were not to be considered when weighing the evidence. George's counsel requested no further relief.

Later in his closing remarks, the prosecutor told the jury that the images presented at trial were only a representative sample of what was found on George's computer. George's counsel objected on the ground that the government's statement was based on facts not in evidence. The District Court overruled the objection, finding that there was testimony that more photos were uncovered than those presented at trial and that the photographs presented at trial were a mere sample. After defense counsel stated in his closing that the prosecution had chosen to show the worst photographs, the prosecutor stated during his rebuttal that what the jury was shown were not the worst photos. The District Court sustained the defense's objection and stated the jury was to decide the case only on the evidence before it.

The prosecutor also stated that he "felt sorry" for George's father and stated that a defense witness who had testified to George's character was a "sweet," "entertaining

5

lady," and that he wouldn't have expected anything else out of her but to say that she knew nothing bad about George. George's counsel objected. The District Court sustained the objection and again instructed the jury not to take into consideration the prosecutor's personal opinions about the evidence presented. George's counsel requested no further relief.

## II.

George raises four points of error on appeal. George first contends that there was insufficient evidence on which a jury could have found that he was the person who downloaded the pornographic images. "We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). In conducting such a review, we must view the evidence in the light most favorable to the government and uphold a jury's verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt. *Id.*; *United States v. McBane*, 433 F.3d 344, 348 (3d Cir. 2005).

George contends both that he had an alibi at the time several of the images were downloaded and that, even if he did not have an alibi, because the computer was in a common area of his home, the government failed to prove beyond a reasonable doubt that he was the person who downloaded the images. As to George's first contention, while the jury could have chosen to believe his alibis, they were not required to do so. The government presented witnesses that contradicted George's testimony as to his whereabouts. George's employer testified that the time sheets George presented at trial

were not written or signed by him and that George worked considerably fewer hours than he claimed during his testimony. The government also presented evidence that rebuffed George's contention that he was at a contempt hearing when one of the images was downloaded. Based on this evidence, a reasonable juror could have chosen to disbelieve George's alibis. It is the jury's duty to weigh the evidence and judge the credibility of the witnesses presented to it. A jury is free to believe or disbelieve the testimony of any witness that appears at trial. *United States v. Boone*, 279 F.3d 163, 189 (3d Cir. 2002). When reviewing credibility determinations by the jury, we must be careful not to usurp its role. *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006). Therefore where, as here, there is substantial evidence upon which a jury could base its conclusion, we will not disturb that determination. *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir. 1992).

George's second contention, that because there were other people in the home the government could not prove he was the person who downloaded the images, is equally without merit. At trial, the government produced evidence that showed George had updated his regular user profile shortly before several pornographic images were downloaded, and that the user profile for "tinylittlepus" included the name "Ms. Al George" and George's birthday. In addition, the government produced testimony indicating that at the time several of the images were downloaded, George was the only person home. Finally, both Smartwood and Vincent testified that they had not downloaded any pornographic images. From this evidence, the jury was able to draw the reasonable inference that George was the person downloading the images onto his

7

computer. *United States v. Knox*, 32 F.3d 733, 753 (3d Cir. 1994) ("A trier of fact, however, may consider direct and circumstantial evidence and the reasonable inferences to be drawn therefrom.").

III.

George next contends that the District Court erred in failing to admit the note he addressed to Vincent and her friends. At trial, the government objected to the note as hearsay. Defense counsel responded that the note was "the original." George now contends that the note was offered for non-hearsay purpose. As the proponent of the evidence, George's counsel bore the burden of proving that the evidence was offered for a non-hearsay purpose. *See Lippay v. Christos*, 996 F.2d 1490, 1497 (3d Cir. 1993) (holding that proponent of hearsay bears the burden of proving why it is admissible). Because George's counsel did not satisfy this burden and, in fact, did not even suggest that the evidence would be used for non-hearsay purposes, the District Court did not abuse its discretion in excluding the evidence. *In re Flat Glass Antitrust Litigation*, 385 F.3d 350, 372 (3d Cir. 2004) (we review district court's decision to admit or exclude based on hearsay for abuse of discretion).

Even if George's counsel had appropriately responded to the government's objection, the District Court did not abuse its discretion in excluding the evidence. The inference George wanted to draw from the note, that he did not know the password, was dependent upon the truth of the statement in the note that he had struggled to get back online after Vincent or her friends had removed his password. The note was offered for

8

the truth of statements it contained and, therefore, was classic hearsay. *See Mahone v. Lehman*, 347 F.3d 1170, 1173 (9th Cir. 2003).

## III.

George also appeals several statements made by the prosecutor during closing arguments, including that the investigation was well conducted, that the agent in charge of the investigation had done a very good job, that the prosecution had not shown the "worst of the worst" of the pornographic images, and that a defense witness would say nothing other than that George was a good man. In essence, George contends that the prosecutor vouched for his own witnesses while attacking the credibility of one of George's character witnesses and referred to facts not in evidence.

George is requesting a new trial on appeal; however, it is important to note that George's counsel did not move for a mistrial at any point during closing arguments. While we generally review a district court's refusal to grant a mistrial for abuse of discretion, in this particular circumstance there was no ruling on a mistrial because defense counsel did not request one. While no other court of appeals appears to have addressed this precise issue, in other contexts where defense counsel objects but fails to request a mistrial, we review failure to grant a mistrial for plain error only. *See United States v. Richards*, 241 F.3d 335, 341 (3d Cir. 2001) (where defendant objected to Jenks Act violation but did not request mistrial we review for plain error). However, even if we were to review for abuse of discretion, our conclusion would be the same.

9

In order for a district court to grant a mistrial for improper vouching by the prosecution, two criteria must be met. First, the prosecutor must vouch for the credibility of a government witness, and, second, the assurance must be based on the prosecutor's personal knowledge or other facts not in evidence. *United States v. Saada*, 212 F.3d 210, 225 (3d Cir. 1998). If we find an error, that error is then subject to the harmless error test: if it is highly probable that the error did not contribute to the judgment, the district court will be affirmed. *United States v. Zehrback*, 47 F.3d 1252, 1265 (3d Cir. 1993) (prosecutor's statements regarding witness credibility are non-constitutional errors subject to the highly probable standard); *United States v. Gambone*, 314 F.3d 163, 177 (3d Cir. 2003). When determining whether a prosecutor's improper remarks in closing constitute harmless error we consider "the comments within the context of the entire trial, the effect of any curative instruction given, and the strength of the evidence against the defendant." *Id.* at 179.

While the prosecutor's statements about the work of the agents and the quality of the investigation constitute vouching, the error caused by such statements was harmless. As an initial matter, both the prosecutor and the District Court offered curative statements. Following the prosecutor's statements, the prosecutor himself told the jury that they were not to consider his opinions. In addition, the District Court instructed the jury that "what [the prosecutor] might have expected or not is not material and it's how you would determine the facts based on the evidence presented to you, Members of the Jury." In addition, viewing the comments in the context of the entire trial suggests that

10

they were harmless. Because the credibility of the agents who conducted the investigation was not at issue, the prosecutor's statements about the quality of that investigation could not have greatly swayed a jury that had already been presented with substantial evidence of George's involvement in downloading the pornography. The same is true of the prosecution's statements about the credibility of the defense's witness.

As was the case in *Zehrbach*:

> Immediately after the objection, the court gave a specific instruction to disregard the prosecutor's comment, an instruction that the court repeated just a short time later at the close of the prosecutor's argument. As a general matter, the court told the jurors to disregard any personal opinion of counsel and to base their decision solely on the evidence. And, in its final instructions, the court cautioned the jury members that the arguments of counsel are not evidence; that they must not be persuaded by bias, prejudice, or sympathy; and that they must not consider any evidence that they were earlier instructed to disregard. We believe that this extensive cautioning by the court was sufficient to cure the prosecutor's error.

*Zehrbach*, 47 F.3d at 1267.

George next contends the prosecutor's statement regarding what photographs were shown during trial was error. During closing statements, George's counsel suggested that the government had only shown a sample of the images collected and that it had chosen to show the worst examples. On rebuttal, the prosecutor stated that it was not the "worst of the worst." After George's counsel objected, the District Court stated that "the jury has got to decide this case on what was shown and what they saw." Again, based on the

11

substantial evidence presented against George, the curative instruction and the statement

in the context of the entire case, the error was harmless.[2]

The other comments George raises on appeal were equally harmless.

IV.

George's final contention regarding the scope of cross-examination was not

preserved for appeal and does not meet our plain error review of such issues.

For the reasons set forth above, we will affirm George's conviction.

---

[2]In its brief, the government suggests that the "invited error" doctrine should apply. The doctrine "teaches that where a prosecutorial argument has been made in reasonable response to improper attacks by defense counsel, the unfair prejudice flowing from the two arguments may balance each other out, thus obviating the need for a new trial." *United States v. Gambone*, 314 F.3d 163, 179 n.11 (3d Cir. 2003) (quoting *United States v. Pungitore*, 910 F.2d 1084, 1126 (3d Cir. 1990)). The doctrine does not apply where defense counsel's attacks were "proper, 'vigorous advocacy.'" *Id.* (quoting *United States v. Molina-Guevara*, 96 F.3d 698, 705 (3d Cir. 1996)). We need not address whether that doctrine would apply to this case because, even if there was error, it was harmless.
