**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. 15-50077 |
| Plaintiff-Appellee, | 15-50186 |
| v. | D.C. No. 2:14-cr-00282-R-3 |
| CHERIE BROWN, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted February 14, 2017
Pasadena, California

Before:  D.W. NELSON, TALLMAN, and N.R. SMITH, Circuit Judges.

Following a jury trial, Cherie Brown appeals her convictions and sentence

for mail fraud and wire fraud. We have jurisdiction under 28 U.S.C. § 1291, and

we affirm.

**1.**    Brown argues she did not receive a fair trial, based on the district

court's (1) refusal to grant her request for a continuance, in full; (2) manner of

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

conducting the trial; and (3) evidentiary and procedural rulings. These allegations did not individually, or in combination, result in an unfair trial.

The district court did not abuse its wide discretion in ruling on Brown's request for a continuance. Brown fails to identify any evidence she would have presented at trial if she had more time to review discovery and prepare. *See United States v. Wilkes*, 662 F.3d 524, 543 (9th Cir. 2011) ("Prejudice resulting from the denial of the continuance must be established."). Brown also fails to acknowledge that, on the day she expected to begin trial, the court granted her an additional month to prepare by severing her from the trial of two co-defendants. Thus, Brown's trial began only three weeks before the date she requested.

Neither the district court's manner of conducting the trial, nor its evidentiary and procedural rulings, showed judicial bias. First, most of the admonishments about which Brown complains occurred outside the presence of the jury to maintain the integrity of the hearing. Second, several interactions had innocent explanations. For example, when the district court confronted Brown about misleading the jury, the court's concern was based on its misunderstanding of an item of evidence rather than on any animosity. Third, although Brown complains that the district court interrupted her presentation twenty-four times, this was not unreasonable for a trial that lasted more than a week. *See United States v. Scott*, 642 F.3d 791, 799 (9th Cir. 2011) (per curiam) (finding no bias where the court

interrupted the defense "over a hundred times during the course of a week-long trial"). Fourth, while Brown argues the district court limited her ability to elicit testimony on several topics and to engage in certain trial practices, each ruling was well within the bounds of the district court's discretion. Considering the court's conduct as a whole—rather than certain incidents in isolation—we are not left with "an abiding impression that the jury perceived an appearance of advocacy or partiality." *United States v. Marks*, 530 F.3d 799, 806 (9th Cir. 2008).

**2.** The district court did not deprive Brown of a defense by exercising its discretion to limit cross-examination. *See United States v. Larson*, 495 F.3d 1094, 1101–02 (9th Cir. 2007) (en banc). Brown could not lay the foundation for the unverified complaint from Daniel Zucker's lawsuit because it was not comprised of Zucker's statements, and Brown could not introduce the complaint under Federal Rule of Evidence (FRE) 801(d)(1)(A) because it was not a statement made "under penalty of perjury." Furthermore, Brown suffered no prejudice from the exclusion, as she was able to introduce the same information through other sources.

Concerning witness Tiffany Ryan, the district court allowed testimony sufficient to show a potential bias and its source. After the district court ensured that Brown had the opportunity to demonstrate Ryan's potential bias, the court acted within its discretion to determine that further testimony on the topic would have been "repetitive or only marginally relevant." *See Larson*, 495 F.3d at 1101

3

(quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

Finally, limits the district court placed on other topics Brown identifies did not exceed the court's discretion to "determin[e] the relevance of a given topic and the extent of [evidence] to be permitted on that topic." *See Scott*, 642 F.3d at 796–97 (quoting *United States v. Brown*, 936 F.2d 1042, 1048 (9th Cir. 1991)).

3.     It was not an abuse of discretion to exclude Brown's out of court statements to investors. *See United States v. Mitchell*, 502 F.3d 931, 964 (9th Cir. 2007). Brown sought to introduce statements, in which she apparently expressed her belief in certain aspects of the companies, to prove that she actually believed in those aspects of the companies. Those statements are hearsay, and Brown's "attempt to introduce[, through FRE 803(3),] statements of her belief (that she was not violating the law) to prove the fact believed (that she was acting in good-faith) [was] improper." *See United States v. Sayakhom*, 186 F.3d 928, 937 (9th Cir.), *amended by* 197 F.3d 959 (9th Cir. 1999) (mem.). Even assuming the statements were excepted under FRE 803(3), Brown introduced evidence of her belief in the financial success of the companies through other means. Thus, she has not shown prejudice. *See Mahone v. Lehman*, 347 F.3d 1170, 1172 (9th Cir. 2003).

4.     The district court's restitution order was not an abuse of discretion. *See United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1162 (9th Cir. 2010). The government had the burden to prove the amount of restitution by a preponderance

of the evidence. *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008); *see also* 18 U.S.C. § 3663A(a)(1)–(2). An FBI forensic accountant used bank records of Gigapix, OZ3D, and related entities to calculate the victims' losses. She cross-checked her own system for determining the deposits made by the victims with an investor list provided by a former Gigapix employee and with documents from trust companies the victims used to make deposits. She then further researched any differences. Although the district court could have imposed over $14 million in restitution, it instead ordered that Brown pay only the $2,566,875 in losses sustained by her own investor victims.

**AFFIRMED**.